UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE L. ETHRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-1184 PLC |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Jamie Ethridge seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her application for Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.    Background and Procedural History

On February 16, 2018, Plaintiff, who was born in February 1980, filed an application for SSI, alleging she was disabled as of January 1, 2016, as a result of: bipolar disorder, schizophrenia, audio and visual hallucinations, mood disorder, insomnia, attention deficit disorder (ADD), post-traumatic stress disorder (PTSD), anxiety, short term memory loss, left side weakness, fibromyalgia, arthritis, peripheral neuropathy, bursitis, and chronic fatigue. (Tr.  80-81, 169).

The Social Security Administration (SSA) denied Plaintiff's claim, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 108-110)  The SSA granted

---

[1] Kilolo Kijakazi became the Acting Commission of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

Plaintiff's request for review and conducted a hearing on September 19, 2019. (Tr.  126)   On November 29, 2019, the ALJ issued a decision finding Plaintiff not disabled. (Tr.  7-25)   Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6, 26-30)   Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ[2]

### A.  Plaintiff's Testimony

At the September 19, 2019 hearing, Plaintiff was 39 years old, and lived with her cousin and her cousin's adult son. (Tr.  37) Plaintiff had a twelfth-grade education and past work experience in retail as a clerk, stocker, and "zoner." (Tr.  38-39) Plaintiff was last employed in 2011 as a housekeeper. (Tr.  38)

Plaintiff has a history of drug abuse, including using methamphetamine from approximately 2014 and 2017 after her boyfriend "got her on meth." (Tr.  40, 42, 599)  Plaintiff's children were removed from her care in 2015 due, in part, to her methamphetamine use and she lost "complete custody" of her children in 2016 after her boyfriend would not allow her "to have a phone"  or "go to court[.]" (Tr.  42)

Plaintiff testified she is "horrible" about seeing family and friends, stating she does not see any friends or talk to people on the phone. (Tr.  44-45) A friend from Plaintiff's church takes her to services every week but Plaintiff does not engage with other people while there. (Tr.  44)

Plaintiff experiences double vision and compromised depth perception since having a brain tumor removed at the age of 11 and, as a result, is unable to drive. (Tr.  37, 600)

---

[2] Because Plaintiff does not challenge the ALJ's determinations regarding her alleged physical conditions or the ALJ's assessment of these conditions in determining her RFC, the Court limits its discussion of the evidence to Plaintiff's mental health conditions.

Plaintiff has PTSD, stating her "main symptoms" are that she "flinch[s] when…[she] hear[s] loud noises." (Tr. 41) Plaintiff is unable to watch certain movies, including movies about children, abuse, or domestic abuse because it reminds her of traumatic events in her life. (Tr. 41-42) Plaintiff is receiving treatment for her PTSD, including medication and therapy. (Tr. 43) Plaintiff recently began Eye Movement Desensitization and Reprocessing (EMDR) therapy with a new counselor (Tr. 43) Plaintiff was not certain how many EMDR sessions would be necessary but read that "it can take eight sessions depending on the trauma." (Tr. 44) Plaintiff has only received one session but believes it has helped desensitize her to her traumatic experiences. (Tr. 44)

Plaintiff testified she had difficulty concentrating, stating it is hard for her to pay attention, that her thoughts go "through her head round and round," and that "phantom words, [swirl] around in [her] head like trying to throw [her] off[.]" (Tr. 47) Plaintiff must re-read sentences to understand the text and will "read" words but not "grasp them" because she is "thinking other things" while reading them. (Tr. 48)

Plaintiff testified her fibromyalgia negatively affects her concentration, stating she gets "fibro fog". (Tr. 49) Some of Plaintiff's medications also negatively affect her concentration, including Topamax, which causes drowsiness and concentration problems, and Gabapentin, which "causes horrible thought processing for [her]" and causes her to feel as if she is "drugged up or drunk[.]" (Tr. 45-46) Topamax, however, has "really helped level [Plaintiff's] mood" and she has not had suicidal thoughts since starting it three to four months ago, an issue she has had since the age of 15. (Tr. 46-47)

    B.  <u>Vocational Expert's Testimony</u>

Vocational expert Marianne Lumpe testified at the hearing. (Tr.  50) The ALJ asked Ms. Lumpe to consider a hypothetical individual with Plaintiff's age, education, and work experience who had the following limitations:

> This individual is able to sit for eight [] of eight hours and she can stand or walk for two hours out of eight hours. This person is able to lift, carry, push or pull negligible weights such as files or documents weighing up to five pounds frequently and up to and including ten pounds occasionally. She can occasionally use foot pedals with her bilateral lower extremities. This person should never climb ladders, ropes or scaffolding. She can on occasion [] climb stairs or ramps, stoop, kneel, crouch and crawl. This individual should never have concentrated exposure to extreme heat or to noxious fumes, odors, gases or airborne particulates. She should never have any exposure to vibration. She should have no concentrated exposure to dangerous machinery and unprotected heights and that type of hazard in general. This person must have [INAUDIBLE] or consistently the same with little or no change. She should never have duties that require interaction with the general public, as a primary function. She can have up to occasional contact with coworkers and with supervisors. The contact with coworkers must be incidental in nature and not in any kind of team or teamwork setting.

(Tr.  51-52).

Ms. Lumpe concluded that such an individual could not perform Plaintiff's past work but could perform other jobs such as ampule sealer, semiconductor bonder, and document preparer which are all unskilled, sedentary positions. (Tr.  52-53). The ALJ modified the hypothetical to include "job duties that are simple, repetitive and routine." (Tr.  53). In response to the modified hypothetical, Ms. Lumpe testified the individual would be able to perform these jobs. (Tr.  53). When the ALJ further modified the hypothetical to include that the "individual would be able to occasionally concentrate and persist[,]" Ms. Lumpe concluded the individual would be precluded from competitive employment. (Tr.  53-54).  Upon questioning by Plaintiff's representative, Ms. Lumpe testified an individual who would be off-task 10% or more per day would be precluded from competitive employment. (Tr.  54).

C.  <u>Medical Records</u>

4

In regard to Plaintiff's medical records, the Court adopts the facts that the Commissioner admitted and that Plaintiff set forth in her statement of material facts. [ECF Nos. 24, 32-1] The Court also adopts the facts contained in the Commissioner's statement of additional facts because Plaintiff did not dispute them. [ECF Nos. 32-1].[3]

## III.    Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1); 42 U.S.C. §1381a.  The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A); See also 20 C.F.R. § 416.905(a).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process.  See 20 C.F.R. § 416.920(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(a), (c).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007)

---

[3] Relevant medical records are discussed in detail below.

(quoting <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920 (d), (e).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations."  <u>Moore v. Astrue</u>, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. 404.1545(a)(1)); <u>see also</u> 20 C.F.R. §§ 416.920(e), 416.945(a)(1).  RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations."  <u>Id.</u> (quoting <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. § 416.920(a), (f); <u>see</u> <u>McCoy v. Astrue</u>, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  <u>McCoy</u>, 648 F.3d at 611; 20 C.F.R. § 416.920(f).

Through step four, the burden remains with the claimant to prove that he or she is disabled. <u>Moore</u>, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 416.920(a), (g); 416.960(c);  <u>Brock v. Astrue</u>, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled.  20 C.F.R. § 416.920(g).

6

## IV.     ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since February 16, 2018, the application date; and (2) had the severe impairments of fibromyalgia, neuropathy, obesity, PTSD, personality disorder, schizoaffective disorder, and attentive-deficit/hyperactivity disorder (ADHD). (Tr.  13) The ALJ concluded Plaintiff had the non-severe impairments of insomnia, anxiety, bursitis, and asthma and that Plaintiff's alleged impairments of arthritis and chronic fatigue were not medically determinable. (Tr.  13)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr.  14) The ALJ found Plaintiff's mental impairments considered singly and in combination, did not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, 12.08, 12.11 or 12.15 because Plaintiff demonstrated no or moderate limitations in the four broad functional areas under paragraph B of the listings. (Tr.  14-15) The ALJ concluded Plaintiff had no limitation in the area of understanding, remembering, or applying information, and moderate limitations in the remaining three areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr.  14-15)

The ALJ determined Plaintiff had the RFC to:

Perform less than the full range of sedentary work as defined in 20 CFR §416.967(a). [Plaintiff] is able to sit for 8 hours out of 8 hours; and she can stand and walk for 2 hours out of 8 hours. [Plaintiff] is able to lift, carry, push or pull negligible weights, such as files or documents, weighting up to 5 pounds frequently and up to and including 10 pounds occasionally. She is able to occasionally use foot pedals with her bilateral lower extremities. [Plaintiff] should never climb ladders, ropes, or scaffolding. She can occasionally climb stairs or ramps; stoop; kneel; crouch; and crawl. She should never have concentrated exposure to extreme heat; to noxious fumes, odors, dust, or airborne particulate; or to hazards, such as dangerous machinery and unprotected heights. [Plaintiff] should never have any

> exposure to vibration. [Plaintiff] must have job duties that are simple, repetitive, and routine. These duties must be consistently the same with little or no change. She should never have job duties that require interaction with the general public as a primary job function. She can occasionally interact with coworkers and supervisor. Her interaction with coworkers must be incidental in nature and not in a teams or teamwork setting.

(Tr. 15-16)

In making this assessment, the ALJ considered Plaintiff's reported conditions and symptoms, including their effect on her ability to "remember, persevere, concentrate, understand, follow instructions, … and get along with others[.]" (Tr. 16)  The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17)

The ALJ also found Plaintiff's statements regarding the severity and limiting effects of her PTSD, personality disorder, schizoaffective disorder, and ADHD were inconsistent with the weight of the record. (Tr. 17) The ALJ found the medical evidence demonstrated that Plaintiff's mental impairments improved with medication and therapy, and that Plaintiff exhibited intact cognitive functioning, memory, thought content, insight and judgment. (Tr. 17) The ALJ also found Plaintiff's statements regarding the severity of her impairments and accompanying symptoms was largely inconsistent with her activities of daily living. (Tr. 18) The ALJ also found persuasive the August 2018 report of Keith L. Allen, Ph.D., the state agency psychological consultant, finding Plaintiff had no or moderate limitations in the four broad functional areas. (Tr. 18)

Based on the vocational expert's testimony, the ALJ concluded Plaintiff was unable to perform any past relevant work. (Tr. 19) However, based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able

to perform other jobs that existed in significant numbers in the national economy, such as ampoule sealer, semi-conductor bonder, and document preparer. (Tr. 20-21)  The ALJ therefore concluded Plaintiff was not disabled. (Tr. 21)

## V.    Discussion

Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. Specifically, Plaintiff contends the ALJ erred in relying on the medical opinion of Jessica Coulter Psy.D. because Dr. Coulter's medical opinion was inconsistent with her own clinical findings and was "outdated," in that it was offered 15 months prior to the hearing decision and did not account for subsequent treatment and objective testing.  [ECF No. 23] Plaintiff also asserts the ALJ did not properly evaluate the effect the subsequent treatment and diagnoses had on Plaintiff's ability to maintain competitive employment. More specifically, Plaintiff contends the ALJ should have found Arthur Peasall's, a licensed professional counselor and Plaintiff's treating counselor, treatment note advising Plaintiff not to work while undergoing EMDR therapy to be probative. Plaintiff also asserts the ALJ erred by making her own independent medical findings with respect to the results of the subsequent objective testing and ADHD diagnosis when the ALJ should have obtained an updated opinion from a medical professional. Finally, Plaintiff argues the RFC cannot be "harmonized" with the ALJ's finding of moderate limitations in three of the broad functional areas because the objective evidence supports a finding that Plaintiff would be off task more than acceptable to maintain competitive employment.

In response, the Commissioner argues the ALJ properly evaluated all of the evidence in the record in rendering the RFC. Specifically, the Commissioner argues Dr. Coulter's conclusions were supported by Dr. Coulter's observations during the consultative examination and by the record as a whole, including Plaintiff's treatment after Dr. Coulter's examination.  [ECF No. 32]

The Commissioner also asserts the ALJ was not required to specifically address every treatment note and that Mr. Peasall's treatment note does not undermine the ALJ's conclusion Plaintiff could maintain competitive employment while undergoing EMDR therapy.

    A.  <u>Standard of Judicial Review</u>

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." <u>Chesser v. Berryhill</u>, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." <u>Id</u>. (quoting <u>Prosch</u>, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." <u>Renstrom v. Astrue</u>, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" <u>Wright v. Colvin</u>, 789 F.3d 847, 852 (8th Cir. 2015) (quoting <u>Perkins v. Astrue</u>, 648 F.3d 892, 897 (8th Cir. 2011)).

When a claimant has a mental impairment, the Social Security Act requires the ALJ to employ the psychiatric review technique when evaluating the severity of the claimant's mental impairments. <u>Cuthrell v. Astrue</u>, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. §§ 404.1520a(a), 416.920a(a)). The psychiatric review technique requires the Commissioner to "first

evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." Id. at 1118 (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)). The Commissioner then rates "the degree of functional limitation" in the following four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 416.920a(c).[4] The Commissioner employs a five-point rating scale in evaluating the effects of the claimant's mental disorder in these four areas of mental functioning. 20 C.F.R., Pt. 404, Subpart P, Appendix 1, 12.00 (F)(1), (2). The scale consists of ratings of none, mild, moderate, marked, and extreme limitation. 20 C.F.R., Pt. 404, Subpart P, Appendix 1, 12.00 (F)(2).[5]

B. Mental RFC

Plaintiff challenges the ALJ's determination of her mental RFC.  RFC is the most a claimant can perform in a work setting despite that claimant's physical or mental limitations. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. §416.945(a)(1).

---

[4] Generally, paragraph B of the listings for mental impairment found in 20 C.F.R., Pt. 404, Subpart P, Appendix 1, provides that these four functional areas are utilized to evaluate how the claimant's mental disorder limits his or her functioning.  20 C.F.R., Pt. 404, Subpart P, Appendix 1, 12.00 (A)(2)(b).

[5] The ratings are defined as follows:
    a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
    b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
    c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
    d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
    e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R., Pt. 404, Subpart P, Appendix 1, 12.00 (F)(2).

The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." Kraus v. Saul, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 416.945(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). "An administrative law judge may not draw upon his own inferences from medical reports." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

1.   The ALJ's Assessment of Dr. Coulter's Consultative Examination Report

Plaintiff argues the ALJ erred in crediting Dr. Coulter's consultative examination report because Dr. Coulter's opinion was inconsistent with her own clinical findings. Plaintiff also maintains that Dr. Coulter's medical opinion was "outdated" because she conducted the consultative examination fifteen months prior to the hearing decision, during which time Plaintiff underwent additional treatment and objective testing. [ECF No. 23] The Commissioner responds that Dr. Coulter's conclusions were supported by her observations during the examination and by the record as a whole, including Plaintiff's treatment after the examination.  [ECF No. 32]

For claims filed on or after March 27, 2017, such as Plaintiff's claim, the regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from

your medical sources." 20 C.F.R. § 404.1520c. Rather, the ALJ will consider all medical opinions according to several enumerated factors: supportability, consistency, relationship with the claimant (e.g., length, frequency, purpose, and extent of treatment), and specialization. Id. The most important factors are supportability and consistency.  Id.

In August 2018, Dr. Coulter conducted a psychiatric consultative examination of Plaintiff. (Tr.  410)  Dr. Coulter reviewed some of Plaintiff's medical records and considered Plaintiff's report of her prior and current mental health diagnoses, symptoms, and treatment. (Tr.  410-411) Dr. Coulter recorded her observations of Plaintiff during the examination. (Tr.  412-413) Dr. Coulter found Plaintiff was appropriately groom and dressed for the appointment, and that she was cooperative and responsive to questions. (Tr.  412) Dr. Coulter observed that Plaintiff fidgeted and swayed side-to-side in her chair, and that she intermittently smiled and was tearful. (Tr.  412) Dr. Coulter found Plaintiff communicated clearly, that her thought process was goal-directed, and that her thought content was logical but circumstantial. (Tr.  412) Although Plaintiff reported experiencing auditory and visual hallucinations, Dr. Coulter observed that Plaintiff did not appear to respond to internal stimuli during the examination and did not demonstrate evidence of "thought disorder" or "poor reality." (Tr.  412) Plaintiff's affect was anxious while "her mood was somewhat exaggerated compared to her affect." (Tr.  412) Dr. Coulter found Plaintiff demonstrated that her recent and remote memory were intact, and that her working memory was good. (Tr.  412-413) Although Plaintiff's insight and judgment were poor, she "demonstrated an ability to think and reason concretely, and her abstract reasoning abilities were fair." (Tr.  413)

As part of her report, Dr. Coulter evaluated Plaintiff's "current level of daily functioning" in the four broad functional areas. (Tr.  413) Dr. Coulter found Plaintiff had no impairment in two of the areas and moderate limitations in the remaining two. Dr. Coulter concluded Plaintiff

demonstrated no limitation with understanding, remembering, or applying information and that Plaintiff appeared "to have the cognitive abilities to learn, recall, and use information to perform work activities." (Tr.  413) Dr. Coulter also found Plaintiff had no impairment in concentration, persistence, and pace, observing Plaintiff "answered questions appropriately and demonstrated good persistence. Her pace was quickened by anxiety." (Tr.  413) Dr. Coulter concluded Plaintiff exhibited a moderate impairment in her interaction with others, noting Plaintiff had a pleasant disposition that would allow her to relate well with supervisors and co-workers but that she had a history of conflict with others. (Tr.  413) Finally, Dr. Coulter determined Plaintiff demonstrated a moderate impairment in adapting and managing herself based on her intense emotions, lack of coping skills, poor judgment, lack of accountability, tendency to blame others, and financial dependency on her cousin. (Tr.  413) Dr. Coulter opined that Plaintiff's prognosis was "fair[,]" noting that with additional psychiatric evaluation and treatment, Plaintiff "may continue to have disruptive personality traits" but could "learn to better manage her emotional reactivity and improve interpersonal relationships." (Tr.  414)

Plaintiff's contention that Dr. Coulter's determination that Plaintiff demonstrated no or moderate limitations in the four broad functional areas was inconsistent with Dr. Coulter's clinical observations is without merit. Plaintiff makes no attempt to differentiate between the areas of functioning but instead asserts that the combination of Dr. Coulter's clinical findings "would be expected to cause more than moderate limitations in all areas of life and work[.]" Plaintiff simply states that "'[p]oor' decision-making, 'poor' judgment and 'lack of' coping skills and accountability do not translate into no limitations or moderate limitations in the four (4) areas of

functioning" and that the only "reasonable" interpretation of Dr. Coulter's clinical findings is to define Plaintiff's functional limitations in the paragraph B criteria as marked.[6]

Plaintiff's argument is essentially that the mere presence of certain symptoms or conditions requires an elevated rating in the functional areas. This position fails to acknowledge that the severity of the symptoms significantly impacts an individual's limitation in a functional area. Here, Dr. Coulter provided her assessment of Plaintiff's functional limitations based on Dr. Coulter's review of the medical records and her observations of Plaintiff.  Dr. Coulter found Plaintiff had no limitation in two of the functional areas and moderate limitations in the remaining two. Dr. Coulter supported her ratings with citations to her clinical observations. The fact that Plaintiff presented with numerous symptoms does not automatically establish that those symptoms "seriously limited" Plaintiff's functioning, as required for a finding of a "marked limitation."

Plaintiff's contention that Dr. Coulter's medical opinion was "outdated" is also without merit. The relevant time period in this case is from February 16, 2018, the date of Plaintiff's application for SSI benefits, to November 29, 2019, the date the hearing decision was issued. (Tr. 21, 410) Dr. Coulter's August 2018 report fits squarely within that time period. The fact that the Plaintiff "underwent additional treatment, objective testing and sustained remission from drugs" following Dr. Coulter's consultative examination does not invalidate Dr. Coulter's medical

---

[6] Notably, to satisfy the paragraph B criteria of a listing to support a finding of disability at step three, the claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the paragraph B areas of mental functioning. 20 C.F.R., Pt. 404, Subpart P, Appendix 1, 12.00 (F).

Plaintiff asserts in her brief: "Dr. Coulter was aware that, if she correctly labeled Plaintiff's limitations as marked in at least two (2) of the four (4) areas of functioning, then the ALJ would have been obligated to find that Plaintiff meets the requirements to qualify for Social Security disability/SSI." Despite this statement, Plaintiff does not argue that the ALJ erred in finding Plaintiff did not meet the requirements of paragraph B of the relevant listings and, thus, did not have an impairment that met or equaled an impairment listed in 20 C.F.R., pt. 404, Subpart P, Appendix 1.  Instead, Plaintiff only asserts the ALJ erred in assessing Plaintiff's limitations in the broad functional areas when determining her mental RFC.

opinion or render it unreliable. The ALJ was aware of Plaintiff's testing and treatment following Dr. Coulter's examination because Plaintiff testified to these circumstances at the hearing and the medical records and evidence related to those events was in the record before the ALJ. Notably, the ALJ concluded that Plaintiff possessed greater functional limitations than opined by Dr. Coulter, finding Plaintiff had moderate limitations in three of the four functional areas. (Tr. 14-15). Because Dr. Coulter's report and opinion was sufficiently current and supported by her clinical observations, the Court finds the ALJ did not err in concluding that Dr. Coulter's consultative examination report was persuasive in determining Plaintiff's mental RFC.

Furthermore, in assessing Plaintiff's functional limitations and Plaintiff's RFC, the ALJ considered not only Dr. Coulter's medical opinion but also the medical records; the report of Dr. Allen, the state agency psychological consultant; and Plaintiff's testimony and self-reported activities of daily living. (Tr. 16-19). This included Plaintiff's self-reported ability to concentrate for 15 minutes at a time and treatment notes finding Plaintiff's PTSD was "stable or improved" and that her mental impairments improved with medication and therapy. (Tr. 17-18). The ALJ also found Plaintiff's self-reported activities of daily living, including her ability to live with others, manage her personal care, prepare meals, perform certain household chores, go outside, ride in a car, shop, manage her finances, watch television, spend time with others, and attend religious services, was similar to those required for full-time competitive employment. (Tr. 17-18). In this case, the ALJ completed the psychiatric review prescribed by the regulations and, after considering the record as a whole, added restrictions to Plaintiff's RFC that accounted for the moderate limitations caused by her disorders.

2.  Treatment and Diagnosis Rendered After Dr. Coulter's Examination

Next, Plaintiff contends the ALJ did not properly evaluate the effects of treatment and diagnoses Plaintiff received after Dr. Coulter's examination on Plaintiff's ability to maintain competitive employment. Specifically, Plaintiff contends the ALJ erred by failing to "evaluate the probative value of" Mr. Peasall's treatment note advising Plaintiff to avoid employment while undergoing EMDR therapy. Plaintiff also argues the ALJ made her own independent medical findings, in lieu of obtaining an updated medical opinion, on the effects of Plaintiff's ADHD diagnosis on the mental RFC.

On June 18, 2019, Mr. Peasall, a licensed professional counselor and Plaintiff's treating counselor, authored a letter to Plaintiff memorializing their mutual decision to temporarily transfer Plaintiff's care to another counselor who was qualified to administer EMDR therapy for her PTSD. (Tr. 588) Mr. Peasall wrote:

> Because your emotional focus will be on dealing with past trauma, and completing the homework necessary to practice certain emotion regulation and distress tolerance skills, I am recommending that you take care to not add additional stress to your day. One obvious example would be your taking a job right now; the stress of scheduling hours, finding transportation to and from, learning of job-related skills, etc., would be contraindicated at this time.

(Tr. 588)

In determining Plaintiff's mental RFC, the ALJ found Mr. Peasall's opinion as expressed in the letter was not entitled to consideration for a number of reasons, including that it was not a medical opinion. (Tr. 19) Plaintiff does not dispute this finding but instead asserts the ALJ should have considered Mr. Peasall's recommendation as a treatment note.

Assuming the ALJ erred in failing to consider Mr. Peasall's recommendation, reversal is not required if the error was harmless. Any error is harmless if "'[t]here is no indication that the ALJ would have decided differently' if the error had not occurred." Grindley v. Kijakazi, 9 F.4th 622, 629 (8th Cir. 2021) (quoting Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008)). Here,

Plaintiff has failed to demonstrate that her alleged inability to work while undergoing EMDR therapy would satisfy the Act's duration requirement.

Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *which has lasted or can be expected to last for a continuous period not less than twelve months*." 42 U.S.C. § 1382c (a)(3)(A); See also 20 C.F.R. § 416.905(a).  The duration requirement applies to both the existence of the impairment and the claimant's inability to work. Barnhart v. Walton, 535 U.S. 212, 215-222 (2002). At the September 2019 hearing, Plaintiff testified she had undergone one session of EMDR therapy and that she had "read" the therapy would last approximately eight sessions. Even assuming Plaintiff's EMDR treatment prevented her from working, nothing in the record suggests this therapy will or is expected to last "for a continuous period not less than twelve months."

Plaintiff also argues the ALJ erred by failing to seek an updated medical opinion to determine the effects of Plaintiff's ADHD diagnosis on the mental RFC. Plaintiff asserts that, in lieu of obtaining a medical opinion, the ALJ made her own independent medical findings and determined that Plaintiff only had moderate limitations in the areas of interacting with others; concentrating, persisting or maintaining; and adapting or managing herself. In response, the Commissioner argues the ALJ was not required to seek additional medical opinions and that the ALJ could rely on the relevant evidence contained in the record in determining Plaintiff's mental RFC.

The ALJ "has a duty to fully and fairly develop the evidentiary record." Byes v. Astrue, 687 F.3d 913, 915-16 (8th Cir. 2012). In some cases, the duty to develop the record requires the ALJ to obtain medical evidence, such as a consultative examination of the claimant, before

rendering a decision. See 20 C.F.R. §404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." McCoy, 648 F.3d at 612. "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) (quoting Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir.1984)).

In August 2019, Kris Gebhard, M.A. and Summer Johnson Psy.D., performed psychological evaluations of Plaintiff. (Tr.  598-608) Dr. Johnson and M.A. Gebhard conducted a clinical interview of Plaintiff and administered several tests. (Tr.  598) As a result of their evaluations and testing, Dr. Johnson and M.A. Gebhard diagnosed Plaintiff with ADHD. Plaintiff asserts the ALJ should have obtained "an updated medical opinion to determine the effects of ADHD on RFC" because Dr. Coulter rendered her medical opinion without the benefit of this diagnosis.

While Dr. Coulter did not diagnosis Plaintiff with ADD or ADHD, Dr. Coulter's report recognized that Plaintiff had previously been diagnosed with ADD by a psychiatrist and that ADD continued to be one of Plaintiff's chief complaints. Plaintiff's ADHD diagnosis is documented in her medical records as early as April 2017, more than a year before Dr. Coulter's examination. (Tr.  294, 301, 491). Furthermore, this diagnosis is included in the records reviewed by Dr. Coulter prior to her examination of Plaintiff. (Tr.  301, 410). Thus, Plaintiff's assertions that "Plaintiff was not diagnosed with ADHD until August 29, 2019" and that Dr. Coulter did not have the benefit of knowing this diagnosis is simply incorrect. Given the evidence of Plaintiff's ADHD diagnosis and symptoms in the record, this is not a case in which a crucial issue was undeveloped and it was not

necessary for the ALJ to obtain additional medical opinions regarding this known, documented, and considered diagnosis.

> 3.  <u>Whether Plaintiff's conditions would result in her being excessively off-task</u>

Finally, Plaintiff contends the ALJ's finding of moderate limitations in three functional areas cannot be "harmonized" with the RFC assessment because "the objective and clinical findings, [] support a finding that Plaintiff would be off task at least ten percent (10%) of the workday secondary to symptoms from ADHD, significant anxiety, poor decision-making, poor judgment, lack of accountability and coping skills and the need to avoid the stress of employment while undergoing EMDR therapy."

Again, Plaintiff's argument appears to be that the mere presence of certain symptoms or conditions establishes a finding of disability without any meaningful assessment of the severity of the symptoms. Here, the ALJ found Plaintiff's mental health impairments resulted in moderate functional limitations in three of the four functional areas. A moderate functional limitation means a claimant's "functioning in this area independently, appropriately, effectively on a sustained basis is fair." 20 C.F.R., Pt. 404, Subpart P, Appendix 1, 12.00 (F)(2). Plaintiff has presented the Court with no legal or evidentiary support for her apparent assertion that Plaintiff's mental health conditions or a finding of moderate functional limitations mandates a finding that a claimant will be off-task for more than 10 percent of the workday.

**VI.    Conclusion**

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of September, 2022